THOMAS C. HORNE
Attorney General
MICHAEL JETTE
Assistant Attorney General
400 West Congress, Suite S-315
Tucson, Arizona 85701
Telephone No.: (520) 628-6504
Pima County Computer No.: 66110
State Bar No.: 021843
CRMTucson@azag.gov
T002-2012-000230

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| STATE OF ARIZONA, | No. CR-13-1991-TUC-JGZ |
|---|---|
| Plaintiff, | OPPOSITION TO DEFENDANTS' NOTICE OF REMOVAL OF CRIMINAL PROSECUTION PURSUANT TO 28 USC § 1442a |
| v. | |
| GREGG DAVIES (001), *et al* | |
| Defendants. | Hon. Jennifer G. Zipps |

The State of Arizona by the Attorney General **THOMAS C. HORNE** and through his assistant, **MICHAEL JETTE,** opposes defendants' Notice of Removal of Criminal Prosecution because the defendants fail to prove that they were federal officers during the commission of the alleged crimes *and* that the defendants were acting under the color-of-service, which is the two-prong test for removal pursuant to 28 USC § 1442a.

**I. FACTS:** The State of Arizona has alleged in a criminal indictment that starting in early 2007 and continuing through mid-2010, certain members (defendants herein) of the Arizona Air National Guard (ARNG) 214th Reconnaissance Group (214th RG) received Temporary Duty (TDY) entitlements and/or Permanent Change of Station (PCS) funds through fraudulent means.

1

**A. State Base:** The 214th RG flies remote combat sorties in foreign military campaigns using predator drones piloted from the 214th RG ARNG. The ARNG is located at Tucson International Airport; however, throughout most of the 214th RG's mission, is has been housed and operating from Davis-Monthan Air Force Base because Tucson International Airport did not have the required space. Despite its location at Davis-Monthan Air Force Base, the 214th RG is only considered a tenant; it was and remains a fully operational ARNG combat group. All the defendants remained in Tucson, residing off base, during their entire employment with the 214th RG—both under Title 32 and Title 10 orders.

**B. State Control:** The 214th RG was and remains a Reconnaissance Group under the command of the ARNG's 162nd Fighter Wing (162nd FW) and its commanders. The 214th RG's orders, commands, benefits, entitlements, and every other conceivable command and support function was processed and approved via the 162nd FW. Even when mobilized under Title 10 orders—taking operation command from the State to Federal—all processing of the defendants' pay and benefits, including TDY entitlements, was performed by the ARNG's 162nd FW.

**C. State Employees:** When the 214th RG was created in Tucson, Arizona, all ARNG members were recruited and, if selected, ordered to move to Tucson. From their acceptance of the ARNG 214th RG positions until their Title 10 mobilization, all defendants were employed by the State of Arizona. Defendants were recruited and/or applied for 214th RG vacancies posted by ARNG. Defendants either lived in Tucson at the time of their application or moved to Tucson after accepting their positions. Moving to the State of Arizona was a condition precedent to working for the 214th RG. Prior to Title 10 mobilization, the defendants changed their address(es) which provided the opportunity for them to submit allegedly fraudulent TDY

entitlements vouchers. The defendants carried this fraudulent conduct through their Title 10 mobilization and back again when they came off of Title 10 orders and back on Title 32 orders.

**D.     State Prosecution:** The State's indictment does not allege any criminal conduct arising from the defendants' operating drones overseas, nor does the State's indictment allege any criminal conduct from the consequences of drone activity. Rather, the State's indictment alleges that the defendants fraudulently applied for and received TDY entitlements, an activity unrelated to their mission, regardless if state or federal. Even to the extent that title status is relevant, all defendants began their alleged fraudulent conduct prior to Title 10 conversion by fraudulently listing a non-Permanent Duty Station (PDS) residence located outside of Tucson, a prerequisite to receive TDY entitlements.

**E.     Federal Pay:** All the defendants' TDY entitlements were paid directly from the United States Treasury. Importantly, *every* benefit the ARNG receives comes from the U.S. Treasury regardless of Title 32 or Title 10 status.

## II.     LAW AND ARGUMENT

For the defendants to successfully remove a State initiated case to Federal Court, the defendants must satisfy a mandatory two-prong test: (1) that all defendants were federal officers during the time of the event; ***and*** (2) that the defendants acted under their color-of-service.

> A…criminal prosecution in a court of a State of the United States against a **member of the armed forces of the United States** on account of **an act done under color of his office or status, or in respect to which he claims any right, title, or authority under a law of the United States respecting the armed forces thereof**…may at any time before the trial or final hearing thereof be removed for trial into the district court of the United States for the district where it is pending in the manner prescribed by law…
> 28 USC § 1442(a) (emphasis added)

Simply, the purpose of 28 USC § 1442a is to prevent federal officers acting under color of their authority, from being sued [prosecuted] in state courts. *Willingham v. Morgan*, 395 US

3

402, 406 (1969). Additionally, removal permits a defendant to assert a federal defense, i.e., acting under the color-of-service.

> "Historically, removal under §1442(a)(1) and its predecessor statutes was meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties. *Arizona v. Manypenny,* 451 US 232 (1981)

*Manypenny* sets the standards a defendant must meet to satisfy the two-prong test. In *Manypenny,* the defendant was a U.S. Border Patrol agent who shot a fleeing illegal alien, permanently injuring him. The Pima County Attorney's office indicted Manypenny and the case was removed to Federal Court for ultimate prosecution because Manypenny was able to demonstrate that he was a federal officer and that his conduct was under his color-of-service. *Id.*

> "Respondent was indicted in an Arizona state court for the commission of a state crime. Because the charge arose from an act committed while he was on duty as a federal Border Patrol Agent, respondent, pursuant to 28 U.S.C. § 1442(a)(1), removed the case to Federal District Court. *Id. at 232.*

**A.  Federal Officers:** The first prong of 28 USC § 1442a requires the defendants to be federal officers—members of the armed services to be precise. Here, all defendants were state employees when they began their alleged fraudulent conduct. Specifically, all defendants were ARNG AGRs (full-time Arizona Guard), DSGs (Drill Status Guardsman), or GSs (a civilian technician working full-time for the ARNG), and all defendants were stationed and worked on an ARNG military facility as ARNG drone pilots, sensor operators, and intelligence conveyors. When the defendants were Title 10 mobilized they all became federal employees, *but* they were *state* employees when their alleged fraud began.

**B.  Color-of-Service:** The second prong of 28 USC § 1442a applies only after the court has determined the defendants are federal officers. *Neagle* plainly states that an "action [alleged fraudulent conduct] cannot be prosecuted in state court under state law where the conduct at issue arose from the performance of federal duties." *Cunningham v. Neagle,* 135 US 1, 75 (1890); *Clifton v. Cox,* 549 F.2d 722, 726 (9th Cir. 1977). "A federal immunity defense in criminal cases required allegations that the defendant's conduct was authorized by his federal duties." *New York v Devecchio,* 468 F.Supp.2d 448 (2007).

Even if this Court finds the defendants were federal officers, looking past the fact that the alleged fraudulent conduct started prior to any of the defendants' Title 10 mobilization orders, the defendants did not commit their alleged unlawful conduct under their color-of-service, i.e., their alleged fraudulent conduct did not touch or concern their positions as pilots, sensory operators, or intelligence conveyors. Rather, the alleged fraudulent conduct concerned only the administrative processing of TDY entitlements relating to where the defendants reportedly lived.

To satisfy the second prong, the defendants must prove that they all acted under the color-of-service—flying drones—in the same way that Manypenny proved he was acting under the color-of-service when he shot an illegal alien while serving as a U.S. Border Patrol officer.

In *Cox*, as in *Manypenny*, two federally employed infantry privates shot and killed an escaping convict.

> "Two infantry privates were ordered by their superior to pursue escaping prisoners, to attempt to halt them by shouting "Halt" twice, and to shoot if the halt orders were disobeyed. Following these orders, the petitioner shot and killed one of the prison escapees, and the State of Nebraska instituted criminal charges...Here petitioner, as a duly appointed and acting federal narcotics agent, was empowered to carry firearms and execute search warrants under federal law...We conclude that even though his acts may have exceeded his express authority, this did not necessarily strip petitioner of his lawful power to act under the scope of authority given to him under the laws of the United States...**In so holding, we do not mean to imply that the exercise of authority in and of itself places a federal officer beyond the reach of a state's criminal process. The significant question of whether the conduct was necessary and proper under the circumstances must still be answered.** *Id.* at 728. (emphasis added)

Case law is replete with examples like *Manypenny, Cox,* and *Neagle,* but no case deems a defendant's outright criminal behavior as an act within the defendant's color-of-service. Clearly no commander, no order, and no regulation authorized or permitted the defendants to falsify their place of residence to fraudulently qualify for TDY entitlements.

In contrast to *Manypenny, Cox,* and *Neagle*—which involved federal officers who were acting within their color-of-service— is *Georgia v. Westlake,* 929 F. Supp. 1516, 1520 (M.D. Ga. 1996) in which the defendant was acting outside his color-of-service when he merely broke a traffic law while driving in a U.S. military convoy. The defendant was not acting under color-of-service because he was not given an order to break the law. *See also, Ohio v. Dorko,*

5

247 F. Supp. 866 (N.D. Ohio 1965) (Military member unable to remove case based on motor vehicle accident occurring while driving pursuant to duty); *Naas v. Mitchell*, 233 F. Supp. 414 (D. Md. 1964) (Negligence action involving military member is not removable based on the lack of causal relationship to official duties).

These cases make clear that the defendants must prove they were authorized by the federal government, or that their conduct was essential to the fulfillment of their Title 10 mission, when they allegedly falsified their residence to qualify for TDY entitlements—acts which started before they were even mobilized. Clearly, no such authorization existed, nor is such falsification needed to carry out any orders flying remote drone sorties overseas.

Accordingly, the Court should deny the defendants' request to remove this case from the Pima County Superior Court. The State does not intend to present evidence at the status conference on February 10, 2014; however, the State requests that this Court set an additional date for an evidentiary hearing to allow the State sufficient time to arrange witness testimony.

RESPECTFULLY SUBMITTED this _4_ day of February, 2014.

**THOMAS C. HORNE**
Attorney General

**MICHAEL P. JETTE**
Assistant Attorney General